UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

| | | |
|---|---|---|
| MARIO CAVIN, | ) | |
| | ) | |
| Petitioner, | ) | Case No. 1:05-cv-140 |
| | ) | |
| v. | ) | Honorable Richard Alan Enslen |
| | ) | |
| HUGH WOLFENBARGER, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

REPORT AND RECOMMENDATION

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C.
§ 2254.  On December 7, 2000, Petitioner pleaded guilty in the Lake County Circuit Court to two
counts of second-degree murder, felon in possession of a firearm, two counts of felony-firearm as
enhanced by his designation as an habitual offender-third offense.  In his *pro se* petition, Petitioner
raises the following four grounds for relief:

> I.    PETITIONER WAS DENIED DUE PROCESS WHERE HIS
> GUILTY PLEA WAS NOT MADE KNOWINGLY,
> INTELLIGENTLY, OR VOLUNTARILY, BUT WAS INSTEAD
> THE PRODUCT OF INEFFECTIVE ASSISTANCE OF COUNSEL.
>
> II.   APPELLATE COUNSEL WAS INEFFECTIVE FOR FAILING TO
> RAISE MERITORIOUS ISSUES ON DIRECT APPEAL.
>
> III.  THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING
> TO ORDER A COMPETENCY HEARING, AND BY BREACHING
> THE PLEA AGREEMENT WHEN ORDERING RESTITUTION.
>
> IV.   THE PROSECUTOR COMMITTED MISCONDUCT BY
> KNOWINGLY OVERCHARGING PETITIONER AND OFFERING
> PETITIONER AN ILLUSORY PLEA BARGAIN IN EXCHANGE

FOR THE PROPER CHARGE, AND BY FAILING TO EVALUATE PETITIONER'S COMPETENCY.

Respondent has filed an answer to the petition (docket #15) stating that the grounds should be denied because they are either procedurally defaulted or have no merit. Upon review I find that Petitioner's grounds for relief have no merit. Accordingly, I recommend that the petition for habeas corpus be denied.

### Procedural History

### A.  Trial Court Proceedings

The state prosecution arose from the fatal shooting of brothers William and Joseph Abernathy on March 6, 2000. Petitioner was charged with two counts of first degree murder, two counts of felon in possession of a firearm, one count of use of a firearm in the commission of a felony, and habitual offender-fourth offense. At the arraignment held on March 7, 2000, at which Petitioner appeared without counsel, the trial judge explained the charges and the potential maximum penalties, and Petitioner stated that he understood the judge's explanations. (Arraignment Transcript, 3-4, docket #18). The trial judge also explained Petitioner's *Miranda* rights[1], and Petitioner indicated that he understood these basic rights. (Arraignment Transcript, 5).

On March 29, 2000, the preliminary examination was held with testimony given by Petitioner's girlfriend, Elizabeth Talbott, and William Abernathy's girlfriend, Josephine Buss. Ms. Talbott testified that on the evening of March 6, 2000, she was at home with Petitioner and Ms. Buss. (Preliminary Examination Transcript ("Prel. Ex. Tr."), 15-16, docket #19). William Abernathy arrived at the house, and shortly thereafter he and Ms. Buss began arguing. (Prel. Ex. Tr., 18).

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

William stormed out of the house, and Ms. Buss followed.  (Prel. Ex. Tr., 18).  Ms. Talbott and Petitioner could hear the couple arguing outside, and then heard an automobile drive away.  (Prel. Ex. Tr., 18).  Looking out the window, she and Petitioner saw Ms. Buss laying in the road.  (Prel. Ex. Tr., 18).  Petitioner left the house and went to Ms. Buss's side.  (Prel. Ex. Tr., 20).  When Ms. Talbott saw William driving his automobile down the road toward Petitioner and Ms. Buss, she began walking in the road towards the oncoming vehicle and observed that Joseph Abernathy was in the passenger seat.  (Prel. Ex. Tr., 21).  William stopped the automobile and began talking to Ms. Talbott.  Petitioner approached the driver's side of the automobile, and was holding Ms. Talbott's gun.  (Prel. Ex. Tr., 22).  When Ms. Talbott heard a shot, she ran into the house.  (Prel. Ex. Tr., 23).  Petitioner then entered the house, told Ms. Talbott that William and Joseph had been shot and that "[w]e have to get them out of there."  (Prel. Ex. Tr., 24).  Petitioner told Ms. Talbott and Ms. Buss to follow him in Ms. Talbott's automobile while he drove William's car.  (Prel. Ex. Tr., 26).  At some point, Petitioner stopped and Ms. Buss got into William's car, and Ms. Talbott drove back to her home.  (Prel. Ex. Tr., 27).  When she entered the house, she observed her gun, a 9-millimeter HiPoint, on a stand by the door.  (Prel. Ex. Tr., 28).  She always kept the gun loaded, and generally stored it in a dresser where Petitioner kept his clothes.  (Prel. Ex. Tr., 30).  Ms. Talbott had known Petitioner for approximately two years, and had never seen him assault anyone.  (Prel. Ex. Tr., 43).

Ms. Buss confirmed that while she was visiting with Petitioner and Ms. Talbott, William Abernathy came to the house and she and William began arguing.  (Prel. Ex. Tr., 65-67).  She followed William outside and to his automobile.  (Prel. Ex. Tr., 67).  As she sat next to him in the driver's seat, he drove off.  (Prel. Ex. Tr., 68).  She fell backwards, hitting her head on the side of the automobile, and fell to the ground.  (Prel. Ex. Tr., 68).  Petitioner came to her aid.  He helped

her up, and she began walking towards the house. (Prel. Ex. Tr., 69). When she heard what sounded like firecrackers, she turned and observed Petitioner and Ms. Talbott standing by William's automobile. (Prel. Ex. Tr., 70). While she was riding with Petitioner, he stated that he was not going to take the men to the hospital unless Ms. Buss told a story about what happened to the Abernathys that did not implicate Petitioner. (Prel. Ex. Tr., 73). Ms. Buss agreed, but kept screaming "[w]hy did you kill them." (Prel. Ex. Tr., 73). Petitioner stated that she must "get it straight" that he did not shoot the men, and they discussed possible stories that they could give to the authorities. (Prel. Ex. Tr., 73).

A plea hearing was held on December 7, 2000. After the prosecutor and defense counsel outlined the terms of the plea agreement, the trial judge advised Petitioner that by pleading guilty he was giving up the right to a trial, to be presumed innocent until proven guilty, to confront the witnesses, to present evidence and defenses, and to remain silent. (Plea Hearing Transcript ("P. Hr'g Tr."), 10-12, docket #31). As to each right, Petitioner stated that he understood. (P. Hr'g Tr., 10-12). Petitioner also stated that he understood and agreed with the terms of the plea agreement. (P. Hr'g Tr., 12-13). The trial court questioned Petitioner further:

| Court: | Now, Mr. Cavin, has anyone promised you anything other than or beyond what is in this plea agreement today? |
|---|---|
| Petitioner: | No. |
| Court: | Has anyone threatened you, pressured you, or abused you to get you to plead guilty today? |
| Petitioner: | No. |
| Court: | So in fact this is your voluntary choice to plead guilty today? |
| Petitioner: | Yes. |

(P. Hr'g Tr., 13).

| | | |
|---|---|---|
| Court: | Now, Mr. Cavin, have you had any medication or drugs or alcohol in the last twenty-four hours? |
| Petitioner: | No. |
| Court: | So, in other words, again, you are alert as to what we're doing here today? |
| Petitioner: | Yes. |

(P. Hr'g Tr., 6). Petitioner stated that he was satisfied with the representation he received from his defense counsel. (P. Hr'g Tr., 14). Defense counsel also questioned Petitioner as to whether he had discussed with him the different degrees of murder and manslaughter, and the defense-of-others defense. (P. Hr'g Tr., 20). Petitioner stated that he understood the matters discussed by his counsel, and still wished to go forward with a guilty plea. (P. Hr'g Tr., 20-21).

Petitioner testified at the plea hearing that on March 6, 2000, he observed Josephine Buss sitting on the ground outside his house. Ms. Buss told Petitioner that she had just been hit by an automobile driven by William Abernathy, that the automobile was coming back around the corner, and that she feared she was in danger. (P. Hr'g Tr., 14-15). Petitioner removed a 9-millimeter HiPoint from his girlfriend's truck. (P. Hr'g Tr., 15). When the automobile driven by William Abernathy stopped in front of Petitioner's house, Petitioner walked up to the window and shot both William Abernathy and his passenger, Joseph Abernathy. (P. Hr'g Tr., 15). He stated that he "wanted to do some serious damage, but I didn't know that they would die, . . . I figured there was always that risk of them dying anyway, and I guess I really didn't care." (P. Hr'g Tr., 16). Pursuant to the plea agreement, Petitioner pleaded guilty to two counts of second degree murder, use of a

firearm in the commission of a felony, felon in possession, and third offense habitual offender, and the trial court accepted the pleas. (P. Hr'g Tr., 21-22).

On December 27, 2000, Petitioner was sentenced by the trial court as a third offense habitual offender to terms of imprisonment of 35 to 60 years on both counts of second degree murder; 24 months on both counts of use of a firearm in the commission of a felony; and 40 to 60 months for the count of felon in possession. (Sentencing Transcript ("S. Tr."), 12-14. docket #32). In addition, the trial court ordered restitution of seven thousand dollars. (S. Tr.,14). Prior to receiving his sentence, Petitioner stated that:

> I apologize to [the] Abernathy family and my family for causing everybody this heartache, this unnecessary stuff that didn't have to happen. And I just wish that I had it to do over again, and I would – I would make a lot of more mature decisions.

(S. Tr., 12). Following sentencing, the trial court informed Petitioner that he had waived his automatic right to appeal, but advised that Petitioner could seek leave to appeal and, if he did, the trial court would appoint appellate counsel. (S. Tr., 15).

By appointed counsel, Petitioner filed a motion to withdraw his guilty pleas. Counsel argued that at the time the offenses were committed, Petitioner was suffering from some type of mental illness, most likely multiple personality disorder. (*See* 02/04/2000 Motion Hearing Transcript ("Mot. Tr."), 3-4, docket #33). Counsel introduced letters Petitioner had written to Ms. Talbot as a pre-trial detainee in which he discussed demons and devils that were talking to him and urging him to take certain actions. (02/04/2000 Mot. Tr., 4). Counsel contended that because of his mental state, Petitioner could not have knowingly entered into a plea agreement. Counsel requested

a *Ginther* hearing[2] so that the trial court could determine if trial counsel's performance was deficient for failing to pursue the possible defense of mental impairment.  (02/04/2000 Mot. Tr., 7).  The trial court concluded that Petitioner was not mentally impaired at the time he entered his plea, and accordingly, denied the motion.  (02/04/2000 Mot. Tr., 11).  In making its decision, the trial court considered that Petitioner understood both the terms of the plea agreement and that he was giving up his right to a trial.  Moreover, Petitioner described in detail the circumstances preceding the crime and the crime itself, and the description was consistent with witnesses' accounts.  The trial court found it significant that at sentencing, Petitioner apologized to the victim's family, and stated that in hindsight he would have made a more mature decision regarding the situation.  (02/04/2000 Mot. Tr., 9-11).

### B.  Direct Appeal

Petitioner appealed to the Michigan Court of Appeals raising the claim of ineffective assistance of trial counsel.  His application for leave to appeal was denied "for lack of merit in the grounds presented."  (*See* 07/15/02 Mich. Ct. App. Order ("MCOA Ord."), docket #34).  By order entered February 28, 2003 the Michigan Supreme Court denied his delayed application for leave to appeal for the reason that the Court was "not persuaded that the questions presented should be reviewed by this Court."  (*See* 02/28/03 Mich. Ord., docket #35).

### C. Post-conviction relief

Petitioner filed a motion for relief from judgment in the trial court, raising the same claims he is raising in the instant petition.  By order dated February 19, 2004, the trial court denied the motion. (*See* Lake County Circuit Court Op. and Ord., docket #37).  On June 2, 2004, the

---

[2] *People v. Ginther*, 212 NW2d 922 (Mich. 1973).

Michigan Court of Appeals denied Petitioner's application for leave to appeal "for lack of merit in the grounds presented." (*See* 06/02/04 MCOA, docket #36).  The Michigan Supreme Court denied Petitioner's application for leave to appeal on December 29, 2004, for the reason that Petitioner had "failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)."[3]  (*See* 12/29/04 Mich. Order, docket #37).

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act.  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001).  The AEDPA "prevent[s] federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."   28 U.S.C. § 2254(d).

---

[3] A denial by the Michigan Court of Appeals and the Michigan Supreme Court of a motion under Mich. Ct. R. 6.508 "for failure of the defendant to meet the burden of establishing entitlement to relief under MCR 6.508(D) presents a sufficient explanation that the ruling was based upon the failure to comply with a state procedural rule. *See McFarland v. Yukins*, 356 F.3d 688, 697-98 (6th Cir. 2004); *Burroughs v. Makowski*, 282 F.3d 410, 413-14 (6th Cir. 2000). However, where the Michigan Court of Appeals has issued a merits determination, an order by the Michigan Supreme Court stating that a petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)," does not constitute a clear and express invocation of the procedural bar. *See Abela v Martin*, 380 F.3d 915, 923 (6th Cir. 2004).  In those circumstances, the claims raised in the motion for relief from judgment are not procedurally defaulted.

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. This Court also may not consider decisions of lower federal courts in determining whether the state decision is contrary to, or an unreasonable application of, clearly established federal law. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 944 (6th Cir. 2000). Thus, the inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 317-18 (6th Cir. 2001).

A decision of the state court may only be overturned if it (1) applies a rule that contradicts the governing law set forth by the Supreme Court, (2) confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the fact of the case; or (4) either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 405-07); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be 'unreasonable' "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 409.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546-47 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Where the state court has not articulated its reasoning, the federal courts are obligated to conduct an independent review to determine if the state court's result is legally or factually unreasonable. *See Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

### Discussion

### I.    Ground I:  Ineffective assistance of trial counsel

Petitioner contends that his plea of guilty was not made knowingly, intelligently, or voluntarily but was the result of ineffective assistance of trial counsel. He claims trial counsel was ineffective for the following five reasons: (1) counsel failed to request a competency hearing, (2) counsel failed to advise Petitioner of an insanity defense, (3) counsel failed to object to the restitution order, (4) counsel failed to object to an illusory plea bargain, and (5) counsel coerced Petitioner to plead guilty.

In *Strickland v. Washington*, 466 U.S. 668, 687-88  (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient

- 10 -

performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance of counsel must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

The two-part *Strickland* test applies to challenges to guilty pleas based on ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58. Regarding the first prong, the court applies the same standard articulated in *Strickland* for determining whether counsel's performance fell below an objective standard of reasonableness. *Id.* In analyzing the second, or prejudice, prong, the focus is on whether counsel's constitutionally deficient performance affected the outcome of the plea process. "[I]n order to satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id*. at 59. A defendant can meet this burden by showing that there was an "affirmative defense," such as an insanity defense, that "likely would have succeeded at

trial,"or "by showing that he or she was not competent to plead guilty." *See Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001); *Eddmonds v. Peters*, 93 F.3d 1307, 1317 (7th Cir. 1996); *Theriot v. Whitley*, 18 F.3d 311, 313-14 (5th Cir. 1994). "A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgment." *Strickland*, 466 U.S. at 691.

### A. Competency hearing

The United States Supreme Court has "repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates due process.'" *Cooper v. Oklahoma*, 517 U.S. 348, 354 (1996) (citations omitted). A defendant, however, "is not prejudiced by counsel's failure to seek a competency evaluation, absent an actual basis to support a claim of incompetency at the time of the proceeding." *Blair v. Phillips*, 106 F.Supp.2d 934, 941 (E.D. Mich. 2000). The standard for competence to plead guilty is "whether the defendant has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and has "a rational as well as factual understanding of the proceedings against him." *Godinez v. Moran*, 509 U.S. 389, 396 (1993). Under Michigan statute, a defendant is presumed competent to stand trial and "shall be determined incompetent to stand trial only if he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MICH. COMP. LAWS § 330.2020(1). The focus in a competency inquiry is the defendant's mental state at the time of trial or entering a plea. *See Jackson v. Indiana*, 406 U.S. 715, 739 (1972).

At his preliminary hearing, Petitioner stated that he understood the trial judge's

explanation of the pending charges and potential penalties.  At the plea hearing, the trial court engaged in a full plea colloquy, and Petitioner responded cogently and appropriately to the trial court's questions.  He acknowledged that he understood the matters he discussed with his attorney. Petitioner's statements on the record "provide strong evidence that [his] plea was intelligent and knowing." *Boyd v. Yukins*, 99 F. App'x 699, 703 (6th Cir. 2004).  Moreover, Petitioner did not exhibit any unusual or irrational behavior during the preliminary hearing or plea hearing.  Nothing in the record demonstrates that Petitioner was not in possession of his faculties at the time he entered his guilty pleas.  Given the absence of evidence indicating that petitioner's competency should have been in doubt, failure of counsel to seek a competency determination was not "outside the wide range of professionally competent assistance" of counsel. *Strickland*, 466 U.S. at 690.  Therefore, the state appellate court's conclusion that the claim had no merit was not an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence.

### B.  Insanity defense

Petitioner claims trial counsel was ineffective for failing to advise Petitioner of a possible insanity defense.  In the context of a guilty plea case, "where the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).  Legal insanity is an affirmative defense that requires a defendant to prove by a preponderance of the evidence that, as a result of mental illness or mental retardation, at the time the crime was committed he lacked

"substantial capacity either to appreciate the nature and quality or the wrongfulness of his or her conduct or to conform his or her conduct to the requirements of the law." MICH. COMP. LAWS § 768.21a(1).  Unless a defendant satisfies this test, mental illness does not otherwise constitute a defense of legal insanity.  *Id.*  In support of his claim, Petitioner relies solely on his post-arrest letters to Ms. Talbot indicating that at the time of the offense he was being directed by demonic voices.  However, there is no evidence that prior to shooting the Abernathy brothers, Petitioner had ever been referred for a mental health evaluation, or had ever required psychiatric treatment.  There was no testimony from family or friends that Petitioner had ever made statements or exhibited behavior indicative of mental illness. Ms. Talbot testified that she had never witnessed Petitioner engaging in aggressive behavior.  The pre-sentence report reveals that Petitioner had no psychiatric history.  (*See* Petitioner's Mem. of Law, Ex. C, docket #2 ).  Neither the witnesses nor the police officers that responded to the scene testified that Petitioner was exhibiting bizarre behavior immediately before or after the incident.  Petitioner's testimony that he "wanted to do serious damage," shows that he understood the nature and potential consequences of his actions.  His statement to Ms. Talbot that "we have to get them out of here," and his demand that Ms. Buss devise a story that did not implicate Petitioner, show that he understood the wrongfulness of his actions.  His apology to the family in which he stated that if he had to do it over again, he would have made "more mature decisions," indicates that he had the volitional capacity to make a different decision and conform his conduct to the law.  Because the record does not support a conclusion that legal insanity was a viable defense that stood a reasonable chance of succeeding, it was not unreasonable for trial counsel to forego such a defense.  Accordingly, Petitioner has not showed that trial counsel was ineffective under the standard set forth in *Strickland*.  Because the claim lacks merit, the state appellate court's decision

was neither contrary to nor an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented.

### C.  Restitution order

In addition to sentencing Petitioner to 35 to 60 years' of incarceration, the trial court ordered restitution in the amount of seven thousand dollars.  (S.Tr., 14).  Petitioner claims that trial counsel was ineffective for failing to object to the order of restitution.  He argues that because restitution was not part of the plea bargain, there is a reasonable probability that had counsel objected, restitution would not have been ordered.

In discussing the pre-sentence report at sentencing, the trial court stated that, "[t]he Court had one question.  There was a reference to restitution of seven thousand dollars."  (S. Tr., 6).  The prosecuting attorney explained that this represented funeral expenses.  (S. Tr., 6).  Under Michigan law, a victim of a crime is entitled to restitution.

> When sentencing a defendant convicted of a felony, misdemeanor, or ordinance violation, the court must order, in addition to or in lieu of any other penalty authorized by law, or in addition to any other penalty required by law, that the defendant make full restitution to any victim, or to that victim's estate, of the defendant's course of conduct that gives rise to the conviction.

MICH. COMP. LAWS § 769.1a(2).  In Michigan, restitution is mandatory by law, and therefore, it is not open to negotiation during the plea-bargaining or sentence-bargaining process.  *See People v. Ronowski*, 564 N.W.2d 466, 467 (Mich. Ct. App. 1997).  Petitioner does not contend that the statute itself is unconstitutional, nor does he challenge the amount of restitution ordered.  Thus, he has failed to show that trial counsel was ineffective for failing to object to the restitution order merely because it was not included in the plea bargain.  The state appellate court's conclusion that this claim had no

merit was neither contrary to or an unreasonable application of clearly established federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented.

### D.  Illusory plea bargain

Petitioner was originally charged with two counts of first degree murder, two counts of being a felon in possession of a firearm, one count of use of a firearm in the commission of a felony, and being a fourth offense habitual offender.  He claims he was advised by trial counsel that as a fourth habitual offender he would receive a life sentence that could be avoided by pleading guilty.  Thus, he argues, because he should have only been charged as a third habitual offender, the plea agreement was "illusory."

On December 4, 2000, a hearing was held on a motion to amend notice of habitual offender filed by Petitioner's trial counsel.  Trial counsel argued that Petitioner should be charged as a third habitual offender rather than a fourth habitual offender.  The prosecuting attorney acknowledged the miscalculation and agreed that the pre-sentence report should be amended, and advised that he would make the appropriate amendment.  (*See* 12/04/2000 Motion. Transcript ("Mot. Tr."), 5, docket #30).  Accordingly, on December 7, 2000, when Petitioner entered his guilty plea, the erroneous charge of fourth offense habitual offender had been rectified.  Petitioner pleaded guilty to two counts of second degree murder, rather than the original charge of first degree murder, and habitual offender-third offense.  Petitioner was sentenced to a term of imprisonment of 35 to 60 years.  Considering that the statutory penalty for first-degree murder is imprisonment for life,  MICH. COMP. LAWS § 750.316(1), while the penalty for second-degree murder is life or any term of years, MICH. COMP. LAWS § 750.317, the benefit Petitioner received from the plea bargain was clearly not "illusory."  Moreover, during the plea hearing, Petitioner stated without reservation that he

understood the terms of the agreement.  The claim lacks merit, and the state court's rejection of the

claim was neither contrary to nor an unreasonable application of clearly established federal law, nor

was it based on an unreasonable determination of the facts in light of the evidence presented.

### E.  Coercion

Petitioner claims that trial counsel coerced Petitioner to plead guilty by failing to

advise him of the possible defense to first-degree murder of voluntary intoxication.  In the context

of a guilty plea case, "where the alleged error of counsel is a failure to advise the defendant of a

potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will

depend largely on whether the affirmative defense likely would have succeeded at trial." *Hill*, 474

U.S. at 59.  Because first-degree murder is a specific intent crime, *see People v. Herndon*, 633

N.W.2d 376, 386 (Mich. Ct. App. 2001)*,* voluntary intoxication may be a defense that, if proven, will

reduce the charge to second-degree murder.[4]  *See People v. Langworthy*, 331 N.W.2d 171, 173

(Mich. 1982).  Second-degree murder is a general intent crime to which voluntary intoxication is not

an available defense.  *Id.*  A defendant raising the voluntary intoxication defense must show that his

intoxication was so severe at the time the crime was committed that it rendered him incapable of

forming the necessary intent.  *People v. King*, 534 N.W.2d 534, 536 (Mich. Ct. App. 1995).

The only reference to alcohol in the record is Ms. Talbot's testimony that before Ms.

Buss arrived at her home, she and Petitioner "had a little bit to drink," and that they were drinking

Wild Irish Rose. (P, Hr'g Tr., 14).  Ms. Talbot did not testify that she and Petitioner continued

---

[4] Mich. Comp. Laws § 768.37 abolished the defense of voluntary intoxication. However, such a defense was available to Petitioner because his offense occurred on March 6, 2000, while the statute abolishes the voluntary intoxication defense for crimes committed after September 1, 2002.

drinking alcohol after Ms. Buss arrived.  Nor did Ms. Buss testify that Petioner was drinking alcohol while she visited with Petitioner and Ms. Talbot.  Petitioner observed Ms. Buss from his window, and comprehended that she was in need of help.  He also recognized that the Abernathys needed medical attention, and he was able to drive to the hospital without visible impairment.  During his allocution, he remembered the events of evening of the Abernathys' death, and his account was consistent with the testimony of Ms. Talbot and Ms. Buss.  The record simply does not demonstrates that Petitioner was so intoxicated at the time he shot the Abernathy brothers that he was incapable of forming the requisite intent.  Accordingly, he has not shown that an intoxication defense would have had a likelihood of being successful.  The state appellate court's conclusion that Petitioner's claim that trial counsel's failure to advise Petitioner of a voluntary intoxication defense had no merit was neither contrary to or an unreasonable application of clearly established federal law, nor an unreasonable determination of the facts in light of the evidence presented.

## II.    Ground III:  <u>Trial court violations</u>

Petitioner claims that the trial court violated his constitutional right by failing to order a competency hearing, and by breaching the plea agreement when ordering restitution.

### A. Competency hearing

Petitioner argues that his rights were violated when the trial court failed to order a competency hearing *sua sponte*.  The due process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence of a defendant's incompetency.  *See Pate v. Robinson*, 383 U.S. 375, 385-85 (1966).  The standard established in *Pate* for requiring competency hearings prior to a trial or the entry of a guilty plea "is not merely whether extant evidence raises 'doubt' as to the defendant's capacity to stand trial, but rather whether

- 18 -

evidence raises a 'bona fide doubt' as to the defendant's competence." *Warren v. Lewis*, 365 F.3d 529, 533 (6th Cir. 2004) (citing *Drope v. Missouri*, 420 U.S. 162, 173 (1975)).  In determining a defendant's competence, the court considers several factors, including "evidence of a defendant's irrational behavior, [the defendant's] demeanor at trial, and any prior medical opinion on competence to stand trial." *Drope*, 420 U.S. at 180.

Petitioner's statements on the record were cogent, giving every indication that he clearly understood the nature of the proceedings, the nature of the plea agreement, and the consequences of pleading guilty.  Petitioner's demeanor during the plea hearing did not indicate that he may be incompetent, and there were no prior medical opinions suggesting that Petitioner was not competent to enter a guilty plea.  The trial court also noted that Petitioner described in detail the circumstances preceding the crime and the crime itself, and the description was consistent with witnesses' accounts.  The record shows that neither Petitioner's statements nor conduct at the preliminary hearing or plea hearing demonstrated the possibility that he was incompetent. Petitioner's post-arrest letters describing demonic voices does not constitute sufficient evidence to raise a "bona fide doubt" as to his competence.  *See, e.g., Mackey v. Dutton*, 217 F.3d 399 (6th Cir. 2000) (upholding determination that defendant was competent despite an earlier diagnosis of schizophrenia and an affidavit from his attorney stating that defendant had difficult in communicating and assisting with his defense). The record does not suggest that at the time of sentencing the trial court had reason to doubt that Petitioner had "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" or that he lacked "a rational as well as a factual understanding of the proceedings against him." Accordingly, Petitioner is not entitled to habeas relief on this claim.

### B.  Restitution

Petitioner claims that the trial court violated his rights by ordering restitution where restitution was not a term of the plea agreement.  As discussed above under Ground I., section C, restitution to a victim of a felony, misdemeanor, or ordinance violation is mandatory, *see* MICH. COMP. LAWS § 769.1a(2), and is not open to negotiation during the plea-bargaining or sentence-bargaining process.  *See Ronowski*, 564 N.W.2d at 467.  Thus, the trial court did not err or breach the plea agreement when ordering restitution.  Petitioner has failed to show an unreasonable application of applicable federal law or an unreasonable determination of facts by the state court.

### III.    Ground IV:  <u>Prosecutorial misconduct</u>

Petitioner claims that the prosecuting attorney committed misconduct by (a) overcharging Petitioner and offering him an illusory plea bargain in exchange for a proper charge, and (b) by failing to evaluate Petitioner's competency.  Misconduct by a prosecutor can rise to the level of a due process violation.  *Lundy v. Campbell*, 888 F.2d 467, 474 (6th Cir. 1989).  However, before habeas corpus relief becomes available, the misconduct must be so egregious as to deny petitioner a fundamentally fair trial.  *Serra v. Mich. Dep't of Corr.*, 4 F.3d 1348, 1355 (6th Cir. 1993).  Among other factors not applicable here, the habeas court must consider the extent to which the claimed misconduct tended to prejudice the petitioner, and whether the claimed misconduct was deliberate or accidental.  *See United States v. Young*, 470 U.S. 1, 11-12 (1985).  Petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'"  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).  Thus, the federal habeas court must

distinguish between "ordinary" error of a prosecutor and "that sort of egregious misconduct . . . amount[ing] to a denial of constitutional due process." *Smith v. Phillips*, 455 U.S. 209, 247 (1982).

### A.  Illusory Plea

Petitioner was originally charged as a fourth habitual offender.  He claims he was advised by trial counsel that as a fourth habitual offender he would receive a life sentence that could be avoided by pleading guilty.  Because he should have only been charged as a third habitual offender, the plea agreement was "illusory."

As discussed above under Ground I, section D, Petitioner was originally charged with first-degree murder as a fourth offense habitual offender.  His trial counsel filed a motion to correct the charge to reflect that the instant offense was only his third offense.  The prosecutor agreed, and stated that he would amend the pre-sentence report. (*See* 12/04/2000 Mot. Tr., 5).  There is no evidence that the prosecutor deliberately charged Petitioner as a fourth offense habitual offender in order to coerce him to plead guilty to a lesser charge.  On December 7, 2000, when Petitioner entered his guilty plea, the prosecutor's erroneous charge of fourth offense habitual offender had been corrected. Had Petitioner been convicted after a trial on a charge of first degree murder as a third offense habitual offender, he would have been sentenced to life in prison.  *See* MICH. COMP. LAWS § 750.317.  Thus, Petitioner suffered no prejudice.  The prosecutor's timely corrected error was not so egregious as to deny Petitioner due process.

### B.  Competency hearing

Petitioner also claims that the prosecutor engaged in misconduct by failing to evaluate Petitioner's competency.  He argues that once the prosecutor became aware of the pre-trial letters Petitioner had penned, the prosecutor had a duty to asked for a competency hearing.  For the

reasons discussed above under Ground I, section A, and Ground III, section A, the record does not demonstrate that Petitioner was incompetent at the time he chose to enter guilty pleas pursuant to a plea agreement.   Petitioner's statements on the record were rational and responsive to the trial court's questions.   Nothing in his record shows that his conduct was less than reasonable or prejudicial to Petitioner.   Accordingly, the prosecutor's failure to instigate an evaluation of Petitioner's competency did not result in a fundamentally unfair proceeding.

## IV.    Ground II:  Ineffective assistance of appellate counsel

On direct appeal, appellate counsel raised only the issue that trial counsel had been ineffective for failing to advise Petitioner of an insanity defense.  Petitioner contends that appellate counsel was ineffective for failing to raise the claims of prosecutorial misconduct and trial court errors that he has presented in the instant petition.  A criminal appellant is constitutionally entitled to the effective assistance of counsel in his direct appeal.  *See Evitts v. Lucey*, 469 U.S. 387, 396 (1985); *Joshua v. DeWitt*, 341 F.3d 430, 441 (6th Cir. 2003).  A claim of ineffective assistance of appellate counsel is analyzed under the *Strickland* standard: (1) whether appellate counsel's performance fell below an objective standard of reasonableness; and (2) whether appellate counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome.  *Strickland*, 466 U.S. at 687-88.

An appellant has no constitutional right to have every non-frivolous issue raised on appeal. "'[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)). To require appellate counsel to raise every possible colorable issue "would interfere with the

constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Strickland*, 466 U.S. at 688.  As the Supreme Court has observed, it is difficult to demonstrate that an appellate attorney has violated the performance prong of the *Strickland* test where the attorney presents one argument on appeal rather than another.  *See Smith v. Robbins*, 528 U.S. 259, 289 (2002).  In such cases, the petitioner must demonstrate that the issue not presented "was clearly stronger than issues that counsel did present." *Id.* at 289.  It is particularly significant in this case that counsel's failure to raise an issue on appeal is ineffective assistance only if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal.  *See Howard v.* Bouchard, 405 F.3d 459, 485 (6th Cir. 2005).  Therefore, failing to raise a meritless claim that has no chance of succeeding does not constitute ineffective assistance of appellate counsel.  *See Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001).  Having determined that Petitioner's current claims lack merit, it follows that appellate counsel's failure to raise the issues was neither unreasonable nor prejudicial, and therefore, does not satisfy the requirements under *Strickland.*.

### Recommended Disposition

For the foregoing reasons, I recommend that the habeas corpus petition be denied.


Date:  August 19, 2008                                    /s/ Ellen S. Carmody
                                                      ELLEN S. CARMODY
                                                      United States Magistrate Judge

- 23 -

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within ten days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b).  Failure to file timely objections may constitute a waiver of any further right of appeal.  *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).